UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CHRISTOPHER O. SMITH, | Case No. 2:22-cv-00759-GMN-BNW |
| Plaintiff | SCREENING ORDER |
| v. | |
| WILLIAM HUTCHINGS, et al., | |
| Defendants | |

Plaintiff, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a civil rights complaint pursuant to 42 U.S.C. § 1983 and has filed an application to proceed *in forma pauperis*. (ECF Nos. 1, 1-1). Plaintiff has also submitted a document titled "Memorandum of Points and Authorities," which the Court construes as a motion for a preliminary injunction. (ECF No. 1-2). The matter of the filing fee will be temporarily deferred. The Court now screens Plaintiff's civil rights complaint pursuant to 28 U.S.C. § 1915A and addresses his motion.[1]

## I.    SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements:

---

[1] Plaintiff has also filed a motion for a status check, stating that he "would like to know" which judges are presiding over this action. (ECF No. 3). The Court grants Plaintiff's motion (ECF No. 3) and notes that the undersigned (Judge Gloria M. Navarro) is the district judge assigned to this action, and that Judge Brenda Weksler is the magistrate judge assigned to this action.

(1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id*.

1    Additionally, a reviewing court should "begin by identifying pleadings [allegations]

2  that, because they are no more than mere conclusions, are not entitled to the assumption

3  of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide

4  the framework of a complaint, they must be supported with factual allegations." *Id.* "When

5  there are well-pleaded factual allegations, a court should assume their veracity and then

6  determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining

7  whether a complaint states a plausible claim for relief . . . [is] a context-specific task that

8  requires the reviewing court to draw on its judicial experience and common sense." *Id*.

9    Finally, all or part of a complaint filed by an incarcerated person may be dismissed

10  *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This

11  includes claims based on legal conclusions that are untenable (e.g., claims against

12  defendants who are immune from suit or claims of infringement of a legal interest which

13  clearly does not exist), as well as claims based on fanciful factual allegations (e.g.,

14  fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989);

15  *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

16  **II.    SCREENING OF COMPLAINT**

17    Plaintiff sues multiple Defendants for events that took place while he was

18  incarcerated at Southern Desert Correctional Center ("SDCC"). (ECF No. 1-1 at 1-3).

19  Plaintiff sues Defendants Warden William Hutchings, Associate Warden Monique Pickett,

20  and Associate Warden James Scally. (*Id.* at 1-2). Plaintiff brings one claim and seeks

21  monetary and injunctive relief. (*Id.* at 4-18).

22    The Complaint alleges the following. From January 2020 to the present, Plaintiff

23  has resided in Unit 12B at SDCC. (*Id.* at 5). 120 inmates live in Unit 12B, which contains

24  dormitory-style housing, with bunk beds placed two and a half feet apart. (*Id.* at 4-5).

25    SDCC officials have failed to take appropriate measures to address the spread of

26  COVID-19 in the prison. (*Id.* at 5). For example, beginning in January 2020, prison officials

27  refused to provide inmates with "adequate mask[s]," hand sanitizer, or cleaning supplies.

28  (*Id.* at 5-6). Officials also failed to implement any social distancing measures in Unit 12B.

(*Id.* at 4). As a result, throughout 2020, Plaintiff was forced to sleep on a bunk bed that was only two and a half feet apart from other inmates. (*Id.* at 4-5). Taken together, the conditions in Unit 12B "made it difficult to control the spread of" COVID-19. (*Id.* at 5).

Around November 12, 2020, Scally, Pickett, and other SDCC staff members visited Unit 12B to address inmates' concerns about COVID-19. (*Id.* at 7). Scally and Pickett stated that since March 2020, they had attended "many meetings" with Hutchings to discuss SDCC's response to COVID-19. (*Id.*) Despite these meetings, Scally and Pickett said that prison officials did not "know how to slow down the spread of COVID-19 at SDCC." (*Id.*) They also said that Unit 12B "must be blessed" because nobody had tested positive for COVID-19. (*Id.*) Scally and Pickett attributed the absence of COVID-19 in Unit 12B to "good water." (*Id.*) Furthermore, they acknowledged that if "one person in Unit 12B" contracted COVID-19, the virus would "rapidly spread throughout" the unit "because of how the building [was] designed." (*Id.* at 7-8).

Around December 4, 2020, Scally, Pickett, and Hutchings visited Unit 12B to persuade inmates to work in the kitchen, which had recently suffered a COVID-19 outbreak. (*Id.* at 8). The outbreak resulted from the lack of hot water in the kitchen, which prevented inmates from "properly wash[ing]" their hands and the food trays they handled. (*Id.* at 6). Scally, Pickett, and Hutchings told inmates that if they refused to work in the kitchen, their access to the phones would be reduced. (*Id.* at 8). Choosing "the less[er] of [ ] two evils," approximately thirty inmates agreed to work in the kitchen. (*Id.*) Shortly thereafter, all of these inmates returned to Unit 12B "sick with coronavirus." (*Id.*)

By December 8, 2020, Plaintiff and approximately 92% of the other inmates in Unit 12B had become "severely ill" from contracting COVID-19. (*Id.*) Many inmates died or were hospitalized. (*Id.*) From December 8, 2020 to January 15, 2021, Plaintiff's symptoms included fever, chills, severe shortness of breath, fatigue, headaches, and loss of taste. (*Id.* at 9). From January 15, 2021 to the present, Plaintiff has experienced symptoms associated with long COVID, including "cloudiness of mind, memory loss, [and] drowsiness." (*Id.*) Plaintiff was particularly vulnerable to serious illness from COVID-19

1  because he suffers from asthma. (ECF No. 1-3 at 5). Although Scally, Pickett, and

2  Hutchings were aware that Plaintiff contracted COVID-19, he has never received medical

3  treatment for his symptoms. (ECF No. 1-1 at 9, 13).

4         On December 22, 2020, Scally visited Unit 12B to address a "protest" that had

5  begun among inmates who had received neither proper medical treatment nor their

6  COVID-19 test results. (*Id.* at 10-11). Scally asked what he and other prison officials could

7  do to "keep the peace" and address inmates' COVID-19 concerns. (*Id.* at 11). Plaintiff and

8  the other inmates demanded their COVID-19 test results, cleaning supplies, N95 masks,

9  social distancing, outdoor time, quarantining of inmates who tested positive for COVID-

10  19, and the release or transfer of 50% of the prison population. (*Id.*) They also requested

11  that prison officials address the lack of hot water in the kitchen. (*Id.*) Although Scally

12  agreed to order medical staff to issue the test results, he stated that he would "not create

13  6-feet social distancing conditions . . . in Unit 12B" and would not provide inmates with

14  N95 masks. (*Id.* at 12).

15         Based on these allegations, Plaintiff asserts (i) an Eighth Amendment claim based

16  on Defendants' allegedly inadequate response to COVID-19, (ii) an Eighth Amendment

17  claim based on Defendants' failure to ensure that Plaintiff received medical treatment for

18  his COVID-19 symptoms, (iii) claims for "cruel and unusual punishment" in violation of

19  Article 1, Section 6 of the Nevada Constitution, and (iv) a claim for "conspiracy to act with

20  deliberate indifference." (*Id.* at 4).

21         **A.     Eighth Amendment—Unsafe Prison Conditions**

22         The Constitution does not mandate comfortable prisons, but neither does it permit

23  inhumane ones. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *Farmer v. Brennan*, 511

24  U.S. 825, 832 (1994). The "treatment a prisoner receives in prison and the conditions

25  under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling*

26  *v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment imposes duties on prison

27  officials to take reasonable measures to guarantee the safety of inmates and to ensure

28  that inmates receive adequate food, clothing, shelter, and medical care. *Farmer*, 511 U.S.

at 832. To establish violations of these duties, the prisoner must show that prison officials were deliberately indifferent to serious threats to his safety. *Id.* at 834. To demonstrate that prison officials were deliberately indifferent to a serious threat to his safety, the prisoner must show that "the official[s] [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the officials] must also draw the inference." *Id.* at 837. Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed. *Id.* at 843.

"It is clear that COVID-19 poses a substantial risk of serious harm." *Martinez v. Sherman*, No. 21-cv-01319, 2022 WL 126054, at *6 (E.D. Cal. Jan. 13, 2022) (collecting cases). To state a cognizable Eighth Amendment claim, however, a plaintiff "must provide more than generalized allegations that the [defendants] ha[ve] not done enough to control the spread" of COVID-19. *Laferriere v. Bodwell*, No. 21-cv-05174, 2021 WL 1386989, at *3 (W.D. Wash. Apr. 13, 2021). Instead, the plaintiff must allege facts showing that each defendant "acted with indifference to the risks posed by COVID-19." *Martinez*, 2022 WL 126054, at *6. "The key inquiry is not whether [the] [d]efendants perfectly responded, complied with every CDC guideline, or whether the efforts ultimately averted the risk; instead, the key inquiry is whether [the] [d]efendant[s] responded reasonably to the risk." *Id.* (internal quotation marks and citation omitted).

Plaintiff states a colorable Eighth Amendment claim against Scally, Pickett, and Hutchings based on their allegedly inadequate response to COVID-19 at SDCC. Plaintiff alleges that, from the beginning of the COVID-19 pandemic, SDCC officials failed to implement any social distancing measures in Unit 12B and refused to provide inmates with "adequate mask[s]," hand sanitizer, or cleaning supplies. (ECF No. 1-1 at 4-6). These conditions "made it difficult to control the spread of" COVID-19 in Unit 12B, which housed 120 inmates who were forced to sleep on bunk beds placed two and a half feet apart. (*Id.* at 4-5). In addition, during a November 2020 visit to Unit 12B, Scally and Pickett (i)

1    admitted that, although they had met with Hutchings several times since March 2020,

2    prison officials did not "know how to slow down the spread of COVID-19 at SDCC"; (ii)

3    acknowledged that if "one person in Unit 12B" contracted COVID-19, the virus would

4    "rapidly spread throughout" the unit "because of how the building [was] designed"; and

5    (iii) attributed the absence of COVID-19 in Unit 12B to "good water." (*Id.* at 7).

6         Plaintiff also alleges that, during the first week of December 2020, Scally, Pickett,

7    and Hutchings told Unit 12B inmates that if they refused to work in the kitchen—which

8    had recently suffered a COVID-19 outbreak—their access to the phones would be

9    reduced. (*Id.* at 8). All of the inmates who subsequently agreed to work in the kitchen

10   returned to Unit 12B "sick with coronavirus." (*Id.*) Shortly thereafter, Plaintiff himself

11   contracted COVID-19 and became seriously ill. (*Id.*)

12        These allegations are sufficient to plead that Scally, Pickett, and Hutchings "acted

13   with indifference to the risks posed by COVID-19." *Martinez*, 2022 WL 126054, at *6.

14   Plaintiff not only alleges that these Defendants failed to implement specific measures to

15   slow the spread of COVID-19; he also pleads that they exposed Unit 12B inmates to the

16   risk of contracting the virus by encouraging them to work in a kitchen that had just

17   experienced a COVID-19 outbreak. Moreover, the Complaint supports a reasonable

18   inference that Plaintiff contracted COVID-19 and became ill due to Defendants' failure to

19   respond appropriately to the spread of the virus. Thus, the Eighth Amendment claim

20   based on the failure to adequately respond to COVID-19 will proceed against Scally,

21   Pickett, and Hutchings.

22        **B.    Eighth Amendment—Deliberate Indifference to Serious Medical Needs**

23        The Eighth Amendment prohibits the imposition of cruel and unusual punishment

24   and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity,

25   and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). A prison official violates the

26   Eighth Amendment when he acts with "deliberate indifference" to the serious medical

27   needs of an inmate. *Farmer*, 511 U.S. at 828. "To establish an Eighth Amendment

28   violation, a plaintiff must satisfy both an objective standard—that the deprivation was

1  serious enough to constitute cruel and unusual punishment—and a subjective standard—

2  deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

3        To establish the first prong, "the plaintiff must show a serious medical need by

4  demonstrating that failure to treat a prisoner's condition could result in further significant

5  injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091,

6  1096 (9th Cir. 2006) (internal quotations omitted). To satisfy the deliberate indifference

7  prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain

8  or possible medical need and (b) harm caused by the indifference." *Id*. "Indifference may

9  appear when prison officials deny, delay or intentionally interfere with medical treatment,

10  or it may be shown by the way in which prison physicians provide medical care." *Id*.

11  (internal quotations omitted). When a prisoner alleges that delay of medical treatment

12  evinces deliberate indifference, the prisoner must show that the delay led to further injury.

13  *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)

14  (holding that "mere delay of surgery, without more, is insufficient to state a claim of

15  deliberate medical indifference").

16        Plaintiff states a colorable claim against Scally, Pickett, and Hutchings for

17  deliberate indifference to serious medical needs. Plaintiff identifies serious medical needs

18  stemming from the symptoms he experienced after contracting COVID-19. (ECF No. 1-1

19  at 8-9). Plaintiff also alleges that, although Scally, Pickett, and Hutchings were aware that

20  Plaintiff contracted COVID-19, he has never received medical treatment for his

21  symptoms. (*Id*. at 9, 13). As a result, Plaintiff continues to suffer from symptoms

22  associated with long COVID, including "cloudiness of mind, memory loss, [and]

23  drowsiness." (*Id*. at 9). These allegations are sufficient to plead that Scally, Pickett, and

24  Hutchings were deliberately indifferent to Plaintiff's serious medical needs. Thus, this

25  claim will proceed against Scally, Pickett, and Hutchings.

26      **C.**    **Cruel and Unusual Punishment under the Nevada Constitution**

27        Article 1, Section 6 of the Nevada Constitution prohibits cruel and unusual

28  punishment. Cruel and unusual punishment claims under the Nevada Constitution

1   generally follow the same standards as the United States Constitution. *See, e.g.*, *Allred*
2   *v. State*, 92 P.3d 1246, 1253 (Nev. 2004); *Naovrath v. State*, 779 P.2d 944, 947 (Nev.
3   1989); *see also Cardenas-Ornelas v. Wickham*, No. 21-cv-00030, 2021 WL 1907827, at
4   *8 (D. Nev. May 11, 2021) ("Courts apply the same legal standards to the cruel and
5   unusual punishment provision included in Article 1, Section 6 of the Nevada Constitution
6   as they do to the cruel and unusual punishment provision of the Eighth Amendment of
7   the United States Constitution."). For purposes of screening, the Court assumes that the
8   Nevada Constitution prohibits the same conduct that is prohibited by the Eighth
9   Amendment. Thus, for the same reasons that Plaintiff states colorable Eighth Amendment
10  claims against Scally, Pickett, and Hutchings, Plaintiff also states colorable claims against
11  these Defendants for violations of Article 1, Section 6 of the Nevada Constitution. These
12  claims will therefore proceed against Scally, Pickett, and Hutchings.

13              **D.    Conspiracy to Violate Constitutional Rights**

14              "To state a claim for a conspiracy to violate one's constitutional rights under section
15  1983, the plaintiff must state specific facts to support the existence of the claimed
16  conspiracy." *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989). The plaintiff must
17  show "an agreement or meeting of the minds to violate constitutional rights," and "[t]o be
18  liable, each participant in the conspiracy need not know the exact details of the plan, but
19  each participant must at least share the common objective of the conspiracy." *Crowe v.*
20  *Cnty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010).

21              Plaintiff fails to state a colorable conspiracy claim. As noted above, Plaintiff
22  sufficiently alleges that Scally, Pickett, and Hutchings individually acted with deliberate
23  indifference to the risks posed by COVID-19 and Plaintiff's need for medical treatment.
24  But Plaintiff provides only vague, conclusory allegations about a conspiracy. (ECF No. 1-
25  1 at 13). He offers no specific factual allegations to support that Scally, Pickett, and
26  Hutchings had a meeting of the minds to interfere with his rights. Plaintiff's vague
27  allegations are insufficient to state a colorable claim for conspiracy to violate constitutional
28  rights. Thus, the Court dismisses this claim without prejudice.

III.    **PLAINTIFF'S CONSTRUED MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiff has filed a document titled "Memorandum of Points and Authorities." (ECF No. 1-2). Citing the allegedly inadequate response to COVID-19 at SDCC, Plaintiff seeks (i) "immediate compassionate release from prison," (ii) $10 million in damages, and (iii) an order requiring the NDOC to release 50% of its prison population. (*Id.* at 13-14). The Court construes this filing as a motion for a preliminary injunction.

Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right." *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). Furthermore, under the PLRA, preliminary injunctive relief must be "narrowly drawn," must "extend no further than necessary to correct the harm," and must be "the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

The Court denies Plaintiff's construed motion for a preliminary injunction without prejudice. Plaintiff primarily seeks an order releasing him from incarceration. The PLRA imposes strict limits on a federal court's authority to issue a prisoner release order, providing—among other things—that no court may enter such an order unless (i) "a court has previously entered an order for less intrusive relief that has failed to remedy the deprivation of the Federal right" and (ii) "the defendant has had a reasonable amount of time to comply with the previous court orders." 18 U.S.C. § 3626(a)(3)(A)(i)-(ii). A "prisoner release order" is defined in the PLRA as "any order . . . that has the purpose or effect of reducing or limiting the prison population, or that directs the release from or nonadmission of prisoners to a prison." 18 U.S.C. § 3626(g)(4). Here, Plaintiff has not shown that a court previously entered an order for less intrusive relief that failed to remedy the constitutional violations alleged in the Complaint. For that reason, the Court currently

1    lacks the authority to issue an order releasing Plaintiff from incarceration. *See Wilson v.*

2    *Cisnerous*, No. 21-cv-01455, 2021 WL 4527353, at *1-2 (E.D. Cal. Oct. 4, 2021) (finding

3    that plaintiff was not entitled to prisoner release order based on inadequate response to

4    COVID-19 because he failed to "show[ ] that a court previously entered an order for less

5    intrusive relief that failed to remedy the deprivation of [his] federal rights"), *adopted by*

6    2021 WL 4864524 (E.D. Cal. Oct. 19, 2021).

7         Plaintiff also seeks $10 million in damages to compensate him for the "pain and

8    suffering" and medical issues he has experienced since contracting COVID-19. (ECF No.

9    1-2 at 14). But "[a] preliminary injunction is not the proper avenue for seeking monetary

10   funds." *Braun v. Fed. Bureau of Investigation*, No. 14-cv-73, 2014 WL 12543849, at *1

11   (D. Mont. Nov. 13, 2014) (citing *Herb Reed Enters., LLC v. Fla. Ent. Mgt., Inc.*, 736 F.3d

12   1239, 1249-50 (9th Cir. 2013)).

13        Finally, as part of this order, the Court will refer the case to the Court's Inmate

14   Early Mediation program so that the parties can engage in mediation and attempt to reach

15   a mutually beneficial resolution of this action. Because the parties will have the

16   opportunity to mediate this issue and potentially come to a mutual resolution, a

17   preliminary injunction would not be in the public interest at this time.

18   **IV.    CONCLUSION**

19        It is therefore ordered that a decision on the application to proceed *in forma*

20   *pauperis* (ECF No. 1) is deferred.

21        It is further ordered that the Clerk of Court file the Complaint (ECF No. 1-1; ECF

22   No. 1-3) and send Plaintiff a courtesy copy.

23        It is further ordered that the claim for conspiracy to violate constitutional rights is

24   dismissed without prejudice.

25        It is further ordered that the Eighth Amendment claim based on the allegedly

26   inadequate response to COVID-19 at SDCC will proceed against Defendants Scally,

27   Pickett, and Hutchings.

28        It is further ordered that the Eighth Amendment claim for deliberate indifference to

1    serious medical needs will proceed against Defendants Scally, Pickett, and Hutchings.

2           It is further ordered that the claims for cruel and unusual punishment under Article

3    1, Section 6 of the Nevada Constitution will proceed against Defendants Scally, Pickett,

4    and Hutchings.

5           It is further ordered that Plaintiff's construed motion for a preliminary injunction

6    (ECF No. 1-2) is denied without prejudice.

7           It is further ordered that Plaintiff's motion for a status check (ECF No. 3) is granted.

8           It is further ordered that, given the nature of the claims that the Court has permitted

9    to proceed, this action is stayed for 90 days to allow Plaintiff and Defendants an

10   opportunity to settle their dispute before the $350.00 filing fee is paid, an answer is filed,

11   or the discovery process begins. During this 90-day stay period and until the Court lifts

12   the stay, no other pleadings or papers may be filed in this case, and the parties may not

13   engage in any discovery, nor are the parties required to respond to any paper filed in

14   violation of the stay unless specifically ordered by the court to do so. The Court will refer

15   this case to the Court's Inmate Early Mediation Program, and the Court will enter a

16   subsequent order. Regardless, on or before 90 days from the date this order is entered,

17   the Office of the Attorney General must file the report form attached to this order regarding

18   the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end

19   of the 90-day stay. If the parties proceed with this action, the Court will then issue an

20   order setting a date for Defendants to file an answer or other response. Following the

21   filing of an answer, the Court will issue a scheduling order setting discovery and

22   dispositive motion deadlines.

23          It is further ordered that "settlement" may or may not include payment of money

24   damages. It also may or may not include an agreement to resolve Plaintiff's issues

25   differently. A compromise agreement is one in which neither party is completely satisfied

26   with the result, but both have given something up and both have obtained something in

27   return.

28          It is further ordered that if the case does not settle, Plaintiff will be required to pay

the full $350.00 statutory filing fee for a civil action. This fee cannot be waived, and the fee cannot be refunded once the Court enters an order granting Plaintiff's application to proceed *in forma pauperis*. If Plaintiff is allowed to proceed *in forma pauperis*, the fee will be paid in installments from his prison trust account. *See* 28 U.S.C. § 1915(b). If Plaintiff is not allowed to proceed *in forma pauperis*, the full $350 statutory filing fee for a civil action plus the $52 administrative filing fee, for a total of $402, will be due immediately.

It is further ordered that if any party seeks to have this case excluded from the inmate mediation program, that party must file a "motion to exclude case from mediation" no later than 21 days prior to the date set for mediation. The responding party will have seven days to file a response. No reply may be filed. Thereafter, the Court will issue an order, set the matter for hearing, or both.

It is further ordered that if Plaintiff needs an interpreter to participate in the mediation program, Plaintiff will file a notice identifying the interpretation language and the need for the interpreter within 30 days from the date of this order.

The Clerk of Court is further directed to add the Nevada Department of Corrections to the docket as an Interested Party and electronically serve a copy of this order and a copy of Plaintiff's Complaint (ECF No. 1-1; ECF No. 1-3) on the Office of the Attorney General of the State of Nevada by adding the Attorney General of the State of Nevada to the interested party on the docket. This does not indicate acceptance of service.

It is further ordered that the Attorney General's Office must advise the Court within 21 days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of Interested Party for the purpose of participation in the Early Mediation Program. No defenses or objections, including lack of service, will be waived because of the filing of the limited notice of appearance.

DATED THIS __28__ day of July 2022.

_____
Gloria M. Navarro, Judge
United States District Court

- 13 -

1    **UNITED STATES DISTRICT COURT**

2    **DISTRICT OF NEVADA**

3

4    CHRISTOPHER O. SMITH,                          Case No. 2:22-cv-00759-GMN-BNW

                                    Plaintiff.     REPORT OF ATTORNEY GENERAL
5                                                   RE: RESULTS OF 90-DAY STAY

6        v.

7    WILLIAM HUTCHINGS, et al.,

                                    Defendants.
8

9    **NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL WILL FILE THIS FORM. THE INMATE PLAINTIFF MAY NOT FILE THIS FORM.**

10

11          On _____ [*the date of the issuance of the screening order*], the Court

12   issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C.

13   § 1915A, and that certain specified claims in this case would proceed. The Court ordered

14   the Office of the Attorney General of the State of Nevada to file a report 90 days after the

15   date of the entry of the Court's screening order to indicate the status of the case at the

16   end of the 90-day stay. By filing this form, the Office of the Attorney General hereby

     complies.
17
                              **REPORT FORM**
18   [Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

19   **Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.**  [If this statement is accurate, check **ONE**

20   of the six statements below and fill in any additional information as required, then proceed to the signature block.]

21

22          _____  A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a

23   settlement (*even if paperwork to memorialize the settlement remains to be completed*).  (*If this box is checked, the parties are on notice that they must

24   SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon

25   which they will file a stipulation of dismissal.*)

26          _____  A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached

27   a settlement.  The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

28
            _____  No mediation session with a court-appointed mediator was held during the

- 14 -

90-day stay, but the parties have nevertheless settled the case. (*If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

\_\_\_\_ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

\_\_\_\_ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

\_\_\_\_ None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

\* \* \* \* \*

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

\_\_\_\_ The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

\_\_\_\_ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

\_\_\_\_ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

\_\_\_\_ None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____        _____

Print                                                Signature

Address: _____        Phone:

_____

_____        Email: _____